UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                :
NATHAN YATES,                   :
                                :
          Petitioner,           :    Civ. No. 14-7823 (NLH)
                                :
     v.                         :         OPINION
                                :
STEPHEN D'ILIO, et al.,         :
                                :
          Respondents.          :
_____:

APPEARANCES:

Michael Confusione, Esq.
Hegge & Confusione, LLC
P.O. Box 366
Mullica Hill, NJ 08062-0366

     *Attorneys for Petitioner*

Grace C. MacAulay, Camden County Prosecutor
Linda A. Shashoua, Chief, Motion and Appeals Unit
Jason Magid, Assistant Prosecutor
Camden County Prosecutor's Office
200 Federal Street
Camden, NJ 08103

     *Counsel for Respondents*

HILLMAN, District Judge

     Petitioner Nathan Yates, presently incarcerated in South

Woods State Prison, New Jersey is proceeding on a petition for a

writ of habeas corpus under 28 U.S.C. § 2254.  ECF No. 1.

Respondents oppose the petition.  ECF No. 6.

     For the reasons stated below, the petition will be denied.

No certificate of appealability shall issue.

I. BACKGROUND

The facts of this case were recounted below and this Court,
affording the state court's factual determinations the
appropriate deference, 28 U.S.C. § 2254(e)(1), reproduces the
recitation of the facts as set forth by the New Jersey Superior
Court, Appellate Division ("Appellate Division") in its opinion
affirming the denial of Petitioner's post-conviction relief
("PCR") petition:

> Defendant was charged with armed robbery (count one),
> N.J.S.A. 2C:15-1; second-degree unlawful possession of
> firearms (count two), N.J.S.A. 2C:39-4(a); third-degree
> unlawful possession of weapon—a handgun (count three),
> N.J.S.A. 2C:39-5(b); fourth-degree possession of hollow
> nose bullets (count four), N.J.S.A. 2C:39-3(f); second-
> degree resisting arrest (count five), N.J.S.A. 2C:29-
> 2(b); and second-degree certain persons not to have
> weapons (count six), N.J.S.A. 2C:39-7.
>
> The charges resulted from a stick-up of a Sicklerville
> convenience store at 9:45 p.m. on May 7, 2002.  The
> counter clerk, Navinchal Patel, described the incident.
> He testified a man wearing a black, hooded sweatshirt,
> entered his store, stepped toward the counter, pointed
> a big, silver gun at his face and demanded money, then
> ran out of the store.  Patel's son, Pranesh, was
> entering the store as the man exited.  Pranesh Patel
> described the assailant as "a six f[oo]t tall, thin,
> black man wearing a black, hooded sweatshirt."  Pranesh
> Patel watched the man enter "a white Ford Taurus with
> Pennsylvania plates that contained the letters 'ED' or
> 'EK' and make a right turn from the parking lot onto
> Hickstown Road."
>
> At 10 p.m., Gloucester Township Police Officer Michael
> McDonnell encountered a white Ford Taurus, bearing

Pennsylvania license plate EKD–XXXX,[1] with a single occupant traveling northbound on Route 42. Officer McDonnell followed the vehicle and saw the driver reach toward the back seat. Officer McDonnell activated his overhead lights to signal the vehicle to stop, and the driver pulled to the shoulder. However, within seconds, the vehicle accelerated and returned to the highway. McDonnell followed in pursuit, "[t]raveling at speeds in excess of ninety miles per hour," when the driver lost control on an exit ramp, flipping the car on its side. Officer McDonnell approached the vehicle, which was empty.

Pranesh Patel identified the vehicle as the one he saw the robber enter after leaving the family store. Searching the car's trunk, Investigator William Townsend found a silver handgun, four hollow nose bullets, and a black sweatshirt with $180 in its pocket. The ring of keys still in the ignition contained a shopper's card and a mailbox key. The shopper's card was registered to defendant's wife, Veronica Yates, and the mailbox key opened the Yates's apartment mailbox. Defendant's driver's license and social security card were found in the glove box along with the vehicle's registration.

The next day, Navinchal Patel was shown an eight-photograph array by Camden County Investigator Brian DeCosmo. He chose defendant's photograph as the assailant. Although stating he did not "exactly" see the assailant's face because he was wearing the hood as he stood approximately five to six feet away, Navinchal Patel saw his nose, eyes and lips and was sure the photo was of the assailant. Investigator DeCosmo "testified that the shopkeeper selected defendant's photo with 'a hundred percent certainty.'" "At trial, Navinchal Patel was unable to identify defendant as the man who entered his store and robbed him at gunpoint."

Defendant's mother testified at trial. She explained defendant called her at around 9 p.m. because he needed a ride home. He and his wife had argued and she left with the car, stranding him at the Baby Depot in

---

[1] "For confidentiality purposes, we do not list the exact license plate number." <u>Yates II</u>, 2014 WL 1316134, at *1 n.2.

> Turnersville.   Mrs. Yates picked up her son by 9:30
> p.m., dropped him off in Philadelphia by 10 p.m., and
> returned to her Swedesboro home around 10:45 p.m.

State v. Yates, No. A-5163-11T1, 2014 WL 1316134, at *1-2 (N.J.

Super. Ct. App. Div. Apr. 3, 2014) ("Yates II") (internal

citations omitted).   Petitioner was convicted on all charges.

Id. at *2.   "After merger, defendant was sentenced to an

aggregate extended term of twenty-five years in prison, subject

to the 85% parole ineligibility period imposed by the No Early

Release Act, N.J.S.A. 2C:43-7.2, for counts one through five and

a consecutive eight-year term on count six."   Id.

On direct appeal, the Appellate Division affirmed

Petitioner's convictions but remanded for resentencing on Count

Four.   State v. Yates, No. A-6378-05T4, 2008 WL 877793 (N.J.

Super. Ct. App. Div. Apr. 3, 2008) ("Yates I"); ECF No. 6-9.

The trial court entered an amended judgment of conviction on

April 3, 2008.   ECF No. 6-5.   The New Jersey Supreme Court

denied certification on June 10, 2008.   State v. Yates, 951 A.2d

1038 (N.J. 2008)(Table); ECF No. 6-13.

Petitioner filed a PCR petition on July 17, 2008.   ECF No.

6-14.   The PCR court held oral argument on January 27, 2012 and

denied the petition without an evidentiary hearing.   ECF No. 6-

21; 7T.[2]  Petitioner appealed, and the Appellate Division affirmed the PCR Court, Yates II, 2014 WL 1316134; ECF No. 6-25. The New Jersey Supreme Court denied certification on October 9, 2014.  State v. Yates, 101 A.3d 1081 (N.J. 2014) (Table); ECF No. 6-29.

Petitioner filed his original petition for habeas corpus pro se on December 16, 2014.  ECF No. 1.  The Honorable Jerome B. Simandle, D.N.J., advised Petitioner of his rights and obligations under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). ECF No. 2.  Petitioner did not submit a response, so Chief Judge Simandle ordered Respondents to answer the petition.  ECF No. 3. On July 23, 2015, Petitioner moved for a stay and abeyance of his petition while he filed a motion for a new trial based on newly discovered evidence in the state courts.  ECF No. 7.

---

[2] 1T = Pre-Trial Conference Transcript dated February 7, 2005; ECF No. 6-30.

2T = Pre-Trial Conference Transcript dated April 25, 2005; ECF No. 6-31.

3T = Trial Transcript dated September 27, 2005; ECF No. 6-32.

4T = Trial Transcript dated September 28, 2005; ECF No. 6-33.

5T = Trial Transcript dated September 29, 2005; ECF No. 6-34.

6T = Sentencing Transcript dated November 4, 2005; ECF No. 6-35.

7T = Post-Conviction Relief Argument Transcript dated January 27, 2012; ECF No. 6-36.

Respondents submitted a letter indicating that they did not object to the request.  ECF No. 8.  Chief Judge Simandle granted the motion for a stay and administratively terminated the petition.  ECF No. 9.

On July 1, 2019, Petitioner, now represented by counsel, filed a motion to reopen his § 2254 proceedings, asking the Court to "restore this habeas case to the active calendar for determination of petitioner's 2254 claims on their merits." ECF No. 11 ¶ 9.  After concluding that Petitioner was not adding any new claims to the petition, the Court granted the motion and reopened the proceedings.  ECF No. 15.[3]

II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254 permits a federal court to entertain a petition for writ of habeas corpus on behalf of a person in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the writ shall not issue with respect to any claim that was adjudicated on the merits by a state court unless

---

[3] The matter was reassigned to the undersigned on August 8, 2019. ECF No. 14.

the adjudication of the claim

> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or
>
> (2) resulted in a decision that was based on
> an unreasonable determination of the facts in
> light of the evidence presented in the State
> court proceeding . . . .

28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

"[A] state-court decision is an unreasonable application of clearly established [Supreme Court] precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). "[A]n unreasonable application of federal law," however, "is different from an incorrect application of federal law." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Williams, 529 U.S. at 410). The Court must presume that the state court's factual findings

are correct unless Petitioner has rebutted the presumption by
clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

III. DISCUSSION

Petitioner presents two arguments for this Court's review:

I.   The prosecutor's remarks in summation, which
     vouched for the credibility of the state's
     witnesses, were error and deprived the Defendant of
     a fair trial.

II.  Defendant's conviction should be reversed because
     Defendant was denied the effective assistance of
     counsel.

ECF No. 1 at 6-7.

A.   <u>Prosecutorial Misconduct</u>

Petitioner argues in his first claim that the prosecutor
impermissibly vouched for the credibility of the State's two
main witnesses during closing arguments.  "The State's main two
witnesses were the robbery victim, Navinchal Patel, and the
officer who chased the suspect vehicle, Michael McDonnell.  The
prosecutor distorted the jury's evaluation of these witnesses by
essentially vouching for their credibility."  ECF No. 1 at 15.
Petitioner did not object to the summation at trial.  The
Appellate Division rejected this claim on its merits during
Petitioner's direct appeal.  <u>Yates I</u>, 2008 WL 877793, at *2-3.

"In evaluating such claims, we consider whether the
prosecutors' comments so infected the trial with unfairness as

to make the resulting conviction a denial of due process." <u>Fahy</u>
<u>v. Horn</u>, 516 F.3d 169, 198 (3d Cir. 2008) (citing <u>Darden v.</u>
<u>Wainwright</u>, 477 U.S. 168, 181 (1986)) (internal quotation marks
omitted).  "When the claim is that a prosecutor's remark at
trial so infected the trial with unfairness as to make the
resulting conviction a denial of due process, we must examine
the comment in light of the entire proceedings." <u>Id.</u> at 203-04.
"This determination will, at times, require us to draw a fine
line - distinguishing between ordinary trial error on one hand,
and that sort of egregious misconduct which amounts to a denial
of constitutional due process on the other hand." <u>Werts v.</u>
<u>Vaughn</u>, 228 F.3d 178, 198 (3d Cir. 2000) (internal quotation
marks omitted).

    The Appellate Division considered the state's summation as
a whole and concluded that it did not violate Petitioner's
rights.  "A summation cannot be evaluated in isolation because
the State is permitted to respond to allegations made by defense
counsel in summation." <u>Yates I</u>, 2008 WL 877793, at *2.
"Defense counsel referred to the shopkeeper as an 'honest' man
because he readily admitted at trial that he was unable to
identify defendant as the man who robbed him." <u>Id.</u> at *3. <u>See</u>
<u>also</u> 4T67:25 to 68:1, 68:15-16.  "Thus, the prosecutor's
characterization of Navinchal Patel's identification one day

after the event was not only fully supported by the trial record but also in direct response to a comment in defendant's summation." Yates I, 2008 WL 877793, at *2.

Likewise, the Appellate Division concluded that "[t]he prosecutor's discussion of what the jury might have heard from Officer McDonnell if he was 'crooked' or 'shady' was in direct response to defense counsel's summation." Id.

> Officer McDonnell could not identify defendant at trial as the man driving the Ford Taurus. Defense counsel argued that McDonnell failed to identify defendant because he did not want to lie, therefore, suggesting that the State had fabricated the evidence linking defendant to the getaway car. Defense counsel also argued that McDonnell was unable to identify defendant at trial because defendant was not the driver of the Ford Taurus. Thus, here too, the prosecutor was simply responding to a comment by defense counsel when he offered an alternative version of McDonnell's testimony, if he was, in fact, reaching to link defendant to the car.

Id. See also 4T81:25 to 82:4 (Trial counsel: "[Officer McDonnell] doesn't identify [Petitioner] and say 'You know what, that's the guy I saw driving the car.' He doesn't say that. They don't ask him that because the answer is that's not the guy in the car. He's not going to come in here and lie.").

The Appellate Division's reasoning follows federal law. "In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo.

10

Thus the import of the evaluation has been that if the
prosecutor's remarks were 'invited,' and did no more than
respond substantially in order to 'right the scale,' such
comments would not warrant reversing a conviction." United
States v. Young, 470 U.S. 1, 12–13 (1985).  When viewed in the
context of the entire proceedings and in consideration of all
the evidence at trial, any objectionable statements by the
prosecutor did not so infect the trial such that habeas relief
would be warranted.  The Appellate Division reasonably applied
federal law and was objectively reasonable in concluding the
remarks did not violate due process.  Habeas relief will be
denied on that claim.

B.   Ineffective Assistance of Counsel

      Petitioner raises several ineffective assistance of counsel
claims.  He argues trial counsel was ineffective for failing to
produce alibi witnesses, failing to discuss trial strategy;
failing to conduct a thorough investigation, and failing to
advance "proper arguments for conducting an identification
hearing."  ECF No. 1 at 16.  He also asserts appellate counsel
was ineffective for failing to raise the identification issue on
direct appeal.  Id.

      To succeed on these claims, Petitioner must "show that
counsel's representation fell below an objective standard of

reasonableness." Strickland v. Washington, 466 U.S. 668, 688
(1984).  He must then show "a reasonable probability that, but
for counsel's unprofessional errors, the result of the
proceeding would have been different. A reasonable probability
is a probability sufficient to undermine confidence in the
outcome." Id. at 694.

Furthermore, "[w]hen a federal habeas petition under § 2254
is based upon an ineffective assistance of counsel claim, '[t]he
pivotal question is whether the state court's application of the
Strickland standard was unreasonable,' which 'is different from
asking whether defense counsel's performance fell below
Strickland's standard.'" Grant v. Lockett, 709 F.3d 224, 232
(3d Cir. 2013) (quoting Harrington v. Richter, 562 U.S. 86, 101
(2011)).  "Federal habeas review of ineffective assistance of
counsel claims is thus 'doubly deferential.'" Id. (quoting
Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).  "When §
2254(d) applies, the question is not whether counsel's actions
were reasonable.  The question is whether there is any
reasonable argument that counsel satisfied Strickland's
deferential standard." Harrington, 562 U.S. at 105.

1. Alibi Witnesses

Petitioner argues trial counsel was ineffective for failing
to produce two additional alibi witnesses at trial: Tiffany Bush

and Veronica Yates, Petitioner's wife.  "[P]etitioner states that trial counsel discussed producing the petitioner's wife, Veronica Yates, his mother, Joanna Yates, and Ms. Tiffany Bush as alibi witnesses.  However, the only defense witness to testify was petitioner's mother - Joanna Yates."  ECF No. 1 at 17.

"Unlike decisions that are reserved to the defendant, such as the right to proceed to a jury trial, counsel — not the defendant — has discretion over whom to call as a witness." Jordan v. Superintendent Coal Twp. SCI, 841 F. App'x 469, 473 (3d Cir. 2021) (citing Gov't of V.I. v. Weatherwax, 77 F.3d 1425, 1434 (3d Cir. 1996)).  See also Berryman v. Morton, 100 F.3d 1089, 1101 (3d Cir. 1996) ("The right to counsel does not require that a criminal defense attorney leave no stone unturned and no witness unpursued."); Judge v. United States, 119 F. Supp. 3d 270, 284-85 (D.N.J. 2015) ("Where a petitioner challenges his counsel's decision as to which witnesses to call, courts are required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons petitioner's counsel may have had for proceeding as he did." (cleaned up)).

"Veronica Yates certified 'on May 7, 2202[sic],' she left defendant at the Turnersville Baby Depot after an argument, and

went straight home.  When she went to give a friend a ride, she realized her car was stolen, surmising she left the keys in the ignition or the trunk.  Further, she explained, at her urging, defendant always left his driver's license in 'the glove department [sic].'"  Yates II, 2014 WL 1316134, at *5 (brackets in original).  See also ECF No. 6-18 at 22-23.  The Appellate Division concluded "[t]he decision not to call Veronica Yates as a witness was strategic and tactical."  Yates II, 2014 WL 1316134, at *5.  "The facts asserted in Veronica Yates's certification do not add to the trial testimony that was provided by defendant's mother, Mrs. Yates.  After she left him at 8 p.m., Veronica Yates offers no information establishing defendant's whereabouts."  Id.

Trial counsel certified: "Regarding the decision not to call the defendant's wife Veronica Yates as a witness, it is my recollection that this was a tactical decision discussed by and between Counsel, the defendant and Mrs. Yates based upon inconsistencies in statements that Mrs. Yates had given to law enforcement."  ECF No. 6-19 at 64.  See also 7T27:25 to 28:6 ("Specifically although defendant's wife wrote in her alibi statement that she left defendant standing — stranded at the Baby Depot after an argument, she initially told police the defendant had left the couple's apartment with 'some friends'

after they had an argument around 7 p.m. on the night of the robbery.").

The Appellate Division's conclusion is a reasonable application of Strickland.  Courts "have found ineffective assistance of counsel where counsel failed to call a potential alibi witness because counsel neglected to investigate such witness."  Jordan v. Superintendent Coal Twp. SCI, 841 F. App'x 469, 473 (3d Cir. 2021) (citing Rolan v. Vaughn, 445 F.3d 671, 682 (3d Cir. 2006)).  "However, in this case, the record . . . clearly shows that counsel investigated [Veronica Yates] as an alibi witness, even going so far as to meet with [her] to prepare for potential testimony."  Id.  See also Locus v. Johnson, No. 18-11527, 2021 WL 1749466, at *30 (D.N.J. May 4, 2021) ("[I]t is significant that defense counsel was aware of these witnesses before trial because it supports the conclusion that counsel made a strategic decision not to call the witnesses.").

"Rather than giving trial counsel the full 'benefit of the doubt,' we are required to 'affirmatively entertain' possible reasons counsel may have had for not calling [Veronica Yates] as a witness."  Jordan, 841 F. App'x at 473 (citing Cullen v. Pinholster, 563 U.S. 170, 196 (2011)).  The Appellate Division reasonably concluded that trial counsel made a strategic

decision not to call Veronica Yates after interviewing and preparing her for trial.  "Such a decision is within the realm of reasonableness and does not violate the dictates of Strickland."  Porter v. Adm'r of New Jersey State Prison, No. 20-2048, 2021 WL 2910944, at *3 (3d Cir. July 12, 2021) (finding state courts reasonably applied Strickland in concluding decision not to call alibi witness due to potential bias was "tactical and sound trial strategy").

The state courts also reasonably applied Strickland in concluding that Petitioner had not shown that trial counsel was ineffective for failing to call Tiffany Bush as an alibi witness.  "With respect to the second witness, Tiffany Bush, petitioner affirmed in his petition below that he met up with this female when his mother dropped him off in Philadelphia and stayed with Bush 'that entire night.'"  ECF No. 1 at 18. Petitioner did not provide a certification from Tiffany Bush in connection with his PCR proceedings.  See Yates II, 2014 WL 1316134, at *6 ("The record contains no evidence regarding the testimony of Tiffany Bush.  Accordingly, defendant's unsupported allegation she should have been called as a witness does not warrant PCR.").

Petitioner speculates as to what Tiffany Bush would have said at trial, but the a showing of prejudice under Strickland

"may not be based on mere speculation about what the witnesses
[counsel] failed to locate might have said." United States v.
Gray, 878 F.2d 702, 712 (3d Cir. 1989). "Under usual
circumstances, we would expect that such information would be
presented to the habeas court through the testimony of the
potential witnesses. 'Complaints of uncalled witnesses are not
favored in federal habeas review.'" U.S. ex rel. Cross v.
DeRobertis, 811 F.2d 1008, 1016 (7th Cir. 1987) (quoting Murray
v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984)). See also Duncan
v. Morton, 256 F.3d 189, 202 (3d Cir. 2001); Huggins v. United
States, 69 F. Supp. 3d 430, 446 (D. Del. 2014) (noting that
movant did not provide an affidavit from the witness stating
that he would have been available to testify and describing his
potential testimony), certificate of appealability denied, No.
14-4129 (3d Cir. Mar. 9, 2015). Petitioner has not provided any
sworn testimony, affidavit, or certification from Tiffany Bush,
and his mere speculation regarding her testimony is insufficient
to establish prejudice. See Duncan, 256 F.3d at 201-02. The
state courts reasonably applied Strickland in denying this
claim.

    2.   Failure to Investigate

    Petitioner also alleges trial counsel "failed to thoroughly
investigate his matter by not going to the baby depot and

17

inquiring about whether there were cameras in the store that had possibly recorded the time that defendant entered and left the premises.  Petitioner submits that trial counsel failed to interview any of the personnel/staff at baby depot to verify that he and his wife had a very loud argument while in the store on the evening of May 7, 2002." ECF No. 1 at 19.  Petitioner further asserts trial counsel "failed to review any tapes from the rear video camera that was activated at the time of the robbery; that counsel failed to obtain the descriptions and obtain statements from the other two people who were in the rear of the store at the time it was being robbed."  Id.

Trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691.  "[T]he 'failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation.'"  United States v. Travillion, 759 F.3d 281, 293 n.23 (3d Cir. 2014) (quoting United States v. Baynes, 622 F.2d 66, 69 (3d Cir. 1980)).

The Appellate Division denied this claim because Petitioner

did "not show there was a working video camera, which captured
him waiting outside the Baby Depot at 9:30 p.m." Yates II, 2014
WL 1316134, at *6.  "Further, the two store customers were not
known to Navinchal Patel, and he stated they fled after
defendant departed, but before police arrived, making their
identity unknown." Id.  These conclusions are reasonable
applications of Strickland.

"When a petitioner alleges that counsel's failure to
investigate resulted in ineffective assistance, the petitioner
has the burden of providing the court with specific information
as to what the investigation would have produced." United
States v. Lathrop, 634 F.3d 931, 939 (7th Cir. 2011). See also
Judge v. United States, 119 F. Supp. 3d 270, 286 (D.N.J. 2015).
Petitioner has not produced any evidence that camera footage
from the Baby Depot existed or was obtainable at the time of
trial. See United States v. Garvin, 270 F. App'x 141, 144 (3d
Cir. 2008).  He also has not identified the two robbery
witnesses and provided affidavits supporting his claim that he
was not the robber. See Desa v. Nogan, No. 21-7444, 2021 WL
4947365, at *6 (D.N.J. Oct. 25, 2021) ("Where a petitioner's
claim of failure to investigate is based on counsel's failure to
investigate or call a certain witness at trial, a showing of
prejudice has an additional requirement – the provision of a

19

sworn affidavit or testimony from the witness regarding the testimony the witness would have been provided had they been called at trial.").  In the absence of specific evidence supporting Petitioner's speculative claims, the Appellate Division reasonably applied <u>Strickland</u>'s prejudice prong.

    3.   Failure to Disclose Trial Strategy

    Petitioner also asserts that "had trial counsel advise[d] him that all three alibi witnesses would not be testifying at the trial, the petitioner may have strongly reconsidered a plea offer because of the disjunctive nature in which the trial counsel chose to present the defense."  ECF No. 1 at 19.  "[T]he inability of trial counsel to produce the testimony of the two additional witnesses was not revealed nor explained to him prior to trial commencing, but developed after the trial had already started."  <u>Id.</u>

    The Appellate Division rejected this argument, noting that "a sequestration order would prevent [Veronica Yates'] presence in the courtroom, until she testified.  Consequently, on the opening day of trial, defense counsel advised the court Veronica Yates decided not to testify and would be staying in the courtroom, apparently to show the jury her support for her husband."  <u>Yates II</u>, 2014 WL 1316134, at *5.  Petitioner was present when trial counsel made this announcement.  The courts

also relied on trial counsel's certification, which stated "the decision not to call the defendant's wife Veronica Yates as a witness, it is my recollection that this was a tactical decision discussed by and between Counsel, the defendant and Mrs. Yates based upon inconsistencies in statements that Mrs. Yates had given to law enforcement."  ECF No. 6-19 at 64.  "The decision not to call her was made collectively and not solely by Counsel."  Id.

The Appellate Division reasonably concluded that trial counsel made a strategic decision not to call Veronica Yates after consulting Petitioner.  "Strategies can and do often change due to a change in circumstances.  Criminal trials are very fluid things.  Even the most experienced and effective trial counsel are compelled to make strategic calls on the fly." Murphy v. Att'y Gen. of New Jersey, No. 17-2960, 2022 WL 17177083, at *15 (D.N.J. Nov. 23, 2022) (internal quotation marks omitted).  The state courts reasonably applied Strickland to this claim, precluding habeas relief.

4. Failure to Challenge Identification Procedures[4]

---

[4] The state courts dismissed as procedurally barred Petitioner's claim that the trial court erred in denying his motion for a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967). Yates II, 2014 WL 1316134, at *4.  Petitioner does not raise this claim in his § 2254 petition, see ECF No. 1 at 7, and the Court would be unable to review it absent a showing of cause and

Petitioner's final ineffective of trial counsel claim alleges that trial counsel failed to "advance proper arguments for conducting an identification hearing."  ECF No. 1 at 20. "[T]rial counsel failed to properly articulate sufficient supplemental facts to provide the court with a basis for sufficiently evaluating whether or not to grant the petitioner's application for a pre-trial identification hearing even after the court invited trial counsel an opportunity during the September 27, 2005 court conference to supplement the record on that very issue."  Id.

The Appellate Division rejected this claim.  At the time of Petitioner's trial, New Jersey law held that "[a] successful challenge to the admissibility of proffered identification testimony shows the procedure in question was in fact impermissibly suggestive, such that the witness's choice did not represent his or her independent recollection."  Yates II, 2014 WL 1316134, at *4 (internal quotation marks omitted).  "If the judge found the procedures impermissively suggestive, it then

---

prejudice in any event.  See Shinn v. Ramirez, 142 S. Ct. 1718, 1730 (2022) ("[O]nly rarely may a federal habeas court hear a claim or consider evidence that -a prisoner did not previously present to the state courts in compliance with state procedural rules.").  The Court is limited to Petitioner's ineffective assistance of counsel claim, which the Appellate Division denied on the merits.  Yates II, 2014 WL 1316134, at *5.

must determine whether the objectionable procedure resulted in a very substantial likelihood of irreparable misidentification." Id. (internal quotation marks omitted) (citing Simmons v. United States, 390 U.S. 377, 384 (1968)).  See also Watkins v. Sowders, 449 U.S. 341, 349 (1981) (holding there is no per se rule requiring Wade hearing).  The Appellate Division stated:

> Defendant's identification challenge proved two of the eight photographs were the same individual; otherwise he offered no evidence showing procedures employed by police were suggestive.  Rather, he suggested Navinchal Patel was mistaken because he was in shock and was focusing on the gun, not the robber.  Trial counsel explained defendant sought to cross-examine Navinchal Patel; however, the State declined, offering police, not the complaining witness's testimony.  The judge rejected defendant's request to subpoena Navinchal Patel to testify prior to trial.  Based on the anticipated police testimony, trial counsel agreed he could not demonstrate suggestibility.  The State noted Investigator DeCosmo would be called to testify at trial, and defense counsel acknowledged he would have the opportunity to challenge the identification procedures at that time.

Yates II, 2014 WL 1316134, at *4.  Trial counsel cross-examined Navinchal Patel during trial, "concentrat[ing] on Navinchal Patel's inability to identify defendant in court and attacked his identification made the day after the robbery."  Id. at *5.  "Counsel was able to establish Navinchal Patel could not 'exactly' see the robber's face because it was partially obscured by his hood; the witness was scared, nervous and concentrating on the gun aimed at his face at the time of the

robbery; and when pressed in court he could not again describe the facial features of the eyes or nose of the assailant that aided Navinchal Patel's choice of defendant's photograph."  Id. "Although cross-examination thoroughly attacked the credibility of the victim and Investigator DeCosmo, the effort yielded no facts supporting a claim the photo array procedures were improper."  Id.

Petitioner has not presented evidence that the identification procedure was impermissibly suggestive, a prerequisite for a Wade hearing, and the record shows that trial counsel attacked the credibility of the identification during trial.  On this record, the Appellate Division reasonably applied Strickland in reaching its conclusion that trial counsel did not "neglect[] the identification issue."  Id.  The Court will deny habeas relief on this claim.

5.   Ineffective Assistance of Appellate Counsel

Petitioner's final claim is that his appellate counsel was ineffective for failing to challenge the denial of the Wade hearing on appeal.  The Court applies the Strickland standard to ineffective assistance of appellate counsel claims.  See Smith v. Robbins, 528 U.S. 259, 285-86 (2000).  To establish the prejudice prong, Petitioner must show "that there is a 'reasonable probability' — 'a probability sufficient to

24

undermine confidence in the outcome,' but less than a
preponderance of the evidence — that his appeal would have
prevailed had counsel's performance satisfied constitutional
requirements." United States v. Cross, 308 F.3d 308, 315 (3d
Cir. 2002) (quoting Strickland, 466 U.S. at 694–95).

The Appellate Division concluded that Petitioner had not
met this standard: "Because we have rejected defendant's
suggestions trial counsel was ineffective, the same claims
lodged against appellate counsel fail for the same reasons we
discussed." Yates II, 2014 WL 1316134, at *5.  This is a
reasonable application of Strickland.  "Appellate attorneys are
not constitutionally required to raise every theoretical issue
on appeal[.]" Bassett v. United States, 188 F. Supp. 3d 411,
420 (D.N.J. 2016) (citing United States v. Turner, 677 F.3d 570,
577–78 (3d Cir. 2012)).  The Appellate Division concluded that
trial counsel was not ineffective for failing to press for a
Wade hearing, and it reasonably follows from there that
appellate counsel was not ineffective for challenging the denial
of a Wade hearing on appeal.  Accordingly, the Court will deny
Petitioner's ineffective assistance of appellate counsel claim.

IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not
appeal from a final order in a habeas proceeding where that

petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right."  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right.  As jurists of reason could not disagree with this Court's resolution of the claims, the Court shall deny Petitioner a certificate of appealability.

V.   CONCLUSION

For the above reasons, the Court will deny the habeas corpus petition.  A certificate of appealability shall not issue.

An appropriate Order follows.


Dated:  February 23, 2023           s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.


26